**D.L.H., Respondent,**

v.

**J.D.H., Appellant.**

**ED 104960**

Missouri Court of Appeals,
Eastern District,
DIVISION ONE.

Filed: June 30, 2017

Rachel Reagan-Purschke, Union, MO, for respondent.

Jon F. Althauser, Legal Services of Eastern Missouri, Inc. Union, MO, for appellant.

Lisa P. Page, Judge

J.D.H. ("Wife") appeals the trial court's declaratory judgment finding her marriage to D.L.H. ("Husband") void as a matter of law. We reverse and remand with instructions.

## BACKGROUND

Wife married James Anderson ("Anderson") in September 1995, and they resided in Texas as a married couple. The couple filed for divorce in 2003. Wife mistakenly believed their marriage was dissolved as of July 30, 2004.

Several months later, in February 2005, Husband and Wife began a relationship while Husband, a resident of Washington, was working in Texas. Within two months, Husband and Wife agreed to marry and began residing together. On July 3, 2005, Husband and Wife traveled to Las Vegas, Nevada and participated in a formal marriage ceremony. They returned to Texas for two weeks, then left the state to reside first in Colorado, then in Michigan.

Subsequent to their marriage, in late 2005 or early 2006, Wife received notice, via mail, of an upcoming date in a Texas court regarding her marriage to Anderson. Upon receiving this notice, Wife requested a continuance, which was denied. The Decree of Divorce between Wife and Anderson was issued on April 20, 2006.

In May 2007, Husband and Wife returned to Texas. There, they filed joint Texas tax returns, wore wedding rings, and raised their children together. The parties openly represented themselves to others as husband and wife. In January 2008, they moved to Michigan, and then returned to Texas in February 2009, where they continued to conduct them-

selves as a married couple. In August 2009, they left Texas for Washington.

In November 2011, Husband and Wife moved to Missouri, but separated sometime thereafter. In late 2012, the Missouri Department of Social Services, Family Support Division initiated a paternity action to declare Husband the father of the parties' minor children. Therein, Husband learned Wife was still married to Anderson when they participated in the July 2005 Las Vegas marriage ceremony.

Husband petitioned to have his marriage to Wife declared void, and Wife countered with a petition for dissolution of marriage. The trial court declared the parties' marriage void under both Missouri and Texas law.

This appeal follows.

## DISCUSSION

Wife submits two points on appeal, contending the trial court erred in declaring the parties' marriage to be void because: (I) Husband and Wife's marriage was valid pursuant to three separate provisions of Texas law; and (II) the trial court did not find Wife induced Husband to marry her by fraud, a prerequisite to declaring a marriage void. As we find Wife's Point I dispositive, we need not address her second point on appeal.

### Standard of Review

Our review is limited to whether the trial court's judgment is supported by substantial evidence, whether it is against the weight of the evidence, or whether it erroneously declares or misapplies the law. Vanderson v. Vanderson, 668 S.W.2d 167, 171 (Mo. App. E.D. 1984) (quoting Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976)).

### Analysis

▋ The trial court's judgment is a correct application of Missouri law because Missouri does not recognize common-law marriages. See Section 451.040.5. Moreover, Missouri declares bigamous marriages void. See Section 451.030; see also Vanderson, 668 S.W.2d at 170 ("All marriages, where either of the parties has a former wife or husband living, shall be void, unless the former marriage shall have been dissolved."). Despite these statutory prohibitions, this State *will* recognize the validity of a marriage if it is valid where contracted. Doyle v. Doyle, 497 S.W.2d 846, 847 (Mo. App. 1973). Here, both parties agree and concede that the question is whether their marriage is valid under Texas law. Thus, whether Wife and Husband formed a valid marriage under Missouri law is irrelevant.

▋ On appeal, Wife proffers three arguments alleging the trial court erred in finding the marriage of Husband and Wife to be invalid under Texas law: (1) the formal marriage that occurred on July 3, 2005 in Las Vegas became valid when the impediment to marriage (i.e., Wife's marriage to Anderson) was removed on April 20, 2006; (2) an informal marriage pursuant to Texas law was entered into by the parties and became valid when the same impediment (Wife's marriage to Anderson) was removed in 2006; or (3) an informal marriage began in 2007 when no impediment to marriage existed. Under these facts, and interpreting Texas law, we find that an informal marriage became valid after the impediment to the parties' marriage was removed by the dissolution of her marriage to Anderson.

### *Texas Law*

▋ Similar to Missouri, Texas declares bigamous marriages to be void. See Tex. Fam. Code § 6.202 (2015). However, unlike

Missouri, a bigamous marriage may become valid under Texas law if "... after the date of the dissolution, the parties have lived together as husband and wife and represented themselves to others as being married." Baqdounes v. Baqdounes, 2009 WL 214508, *4 (Tex. App. Jan. 29, 2009); Villegas v. Griffin Industries, 975 S.W.2d 745, 750 (Tex. App. 1998) ("[A]n informal marriage will be recognized as beginning on the date the prior marriage is dissolved.").[1]

■ In this matter, the trial court declared Wife's marriage to Husband to be null and void under Texas law. First, the trial court determined that since Wife was still married to Anderson when she participated in the Las Vegas ceremony with Husband on July 3, 2005, Wife's marriage to Husband was a void bigamous marriage. Further, as for the protections of § 6.202, the trial court determined the statute offered no relief. The court found that Wife was aware her first marriage had not yet been dissolved because she received papers subsequent to the marriage from a Texas court regarding her first marriage and because she requested a continuance in those proceedings. Additionally, Wife's dissolution to Anderson was not finalized until April 20, 2006, but Husband did not become aware of this fact until 2012. Thus, the trial court concluded that, because "the removal of the impediment was not known to both parties until 2012 ... the court

must look at the intentions and behavior of the parties subsequent to that time." This, however, is a misapplication of Texas law. § 6.202 does not state that the later marriage becomes valid *after the parties discover* the removal of the impediment, but simply "when the prior marriage is dissolved." Thus, we must look at the status of the parties' marriage after Wife's marriage to Anderson was dissolved on April 20, 2006.[2]

The evidence demonstrates that, after the dissolution of Wife and Anderson was finalized, Husband and Wife "lived together as. husband and wife and represented themselves to others as being married." See Baqdounes, 2009 WL 214508 at *4. ("The term of the [second] marriage applies prospectively from and after the time of the dissolution of the prior marriage."). Husband and Wife returned to Texas in May 2007, residing there for nine months. Omodele v. Adams, 2003 WL 133602, at *4 (Tex. App. Jan. 16, 2003) ("[N]either the Family Code nor the common law provide a bright-line test to determine the length of time a couple must cohabitate to satisfy this requirement. Rather, the cohabitation element is determined on a case-by-case basis."). During this time, the two filed joint tax returns in Texas, wore wedding rings, and otherwise held themselves out as husband and wife. Id. ("Representation to others, [i.e.] holding out, may be established by the conduct and actions of the parties."); see also Garcia v. Garcia, 2012

---

1. All opinions and unpublished memorandum opinions in Texas civil cases issued after January 1, 2003 have precedential value, pursuant to Texas Rules of Appellate Procedure Rule 47.7(b). PAK Foods Hous., LLC v. Garcia, 433 S.W.3d 171 (Tex. App. 2014).

2. Cases cited by Husband rely on the "putative spouse" doctrine, which exists to protect the property rights of an innocent spouse whose partner is already married, where the innocent spouse acts in "good faith" (i.e., was unaware of the first marriage) during the

course of his or her marriage. See, e.g., Osuna v. Quintana, 993 S.W.2d 201, 210 (Tex. App.—Corpus Christi 1999). However, Osuna is distinguishable from this case (as are similar "putative spouse" cases), in that the first marriage in Osuna was not dissolved prior to resolution of the subsequent-marriage case, and no such "good faith" requirement is imported in cases where the former marriage is dissolved. See Baqdounes, 2009 WL 214508 at *4.

WL 3115763, at *4 (Tex. App. Aug. 2, 2012) (informal marriage found where husband and wife represented to third parties that they were married by filing joint tax returns). As such, this evidence, as found by the trial court, demonstrates Husband and Wife had a valid marriage under Texas law upon dissolution of Wife's marriage to Anderson.

Husband contends that he never would have agreed to marry Wife, informally or otherwise, had he known in 2006 that his Las Vegas ceremonial marriage was void. However, the record indicates Husband and Wife's pattern of "holding themselves out as married" continued as the two moved from Texas to Michigan, back to Texas, then to Washington, and finally to Missouri. It was not until after the two reached Missouri that they separated, leading to the court proceedings herein. See Omodele, 2003 WL 133602, at *4 ("The impediment to marriage that Omodele claims existed was removed when his divorce from Balogun became final in December 1999. Omodele and Adams continued to live together as husband and wife in their community property home until April 2000. Therefore, the prior marriage does not destroy the existence of a valid common-law marriage between Omodele and Adams.").

Further, insomuch as § 6.202 requires evidence of an agreement to be married,[3] Texas law allows for this agreement to be inferred from husband's and wife's living together and holding themselves out as married. See Smith v. Smith, 607 S.W.2d 617, 621 (Tex. App. 1980); Russell v. Russell, 865 S.W.2d 929, 932 (Tex. 1993). As described above, ample evidence exists to show Husband and Wife had an informal agreement to be married, notwithstanding their *formal* marriage ceremony that took place in Las Vegas in 2005. Husband's request to declare his marriage void is nothing more than an attempt to achieve a common-law divorce, which is not recognized in Texas. Phillips v. The Dow Chem. Co., 186 S.W.3d 121, 127 (Tex. App. 2005) ("Texas recognizes common-law marriage, but does not recognize common-law divorce or annulment.").

Therefore, the trial court's judgment voiding Husband's and Wife's marriage is reversed. On remand, the court shall proceed on Wife's petition for dissolution of her valid Texas marriage, effective April 20, 2006.

Point I is granted.

## CONCLUSION

The judgment of the trial court is reversed and remanded for proceedings consistent with this opinion.

Robert M. Clayton III, P.J. and Mary K. Hoff, J., concur.

---

3. See Tex. Fam. Code. § 2.401 (An informal marriage requires a showing that "the man and woman agreed to be married and after the agreement they lived together in [Texas] as husband and wife and there represented to others that they were married."). This court has doubts as to whether § 6.202 requires such a showing, as the plain language only requires "the parties [to] have lived together as husband and wife and [to have] represented themselves to others as being married." However, under Texas law, even if such a showing is required, we find Wife has made such a showing.